Robert McClare, as Surviving Partner, etc., Appellant, *v.* Samuel Lockard et al., Respondents.

Plaintiff recovered a judgment by default against defendant L. A motion to open said default was made by defendant H., as attorney for L. The latter, in an action brought by H., as his attorney, had recovered a judgment against S. for $1,096. As a condition of granting the motion L., with the consent of H., stipulated, in writing, that the judgment should be and remain a lien upon the judgment against S. Plaintiff having succeeded in the action, brought this action to enforce the stipulation. H. claimed a prior lien for $1,000 upon the S. judgment for his services as attorney. *Held,* that H. was estopped by his silence and concealment of his lien from asserting the same; that it

was his duty to disclose it, if the lien existed, and his silence operated as a fraud upon the court and the plaintiff.

(Argued April 24, 1890; decided May 9, 1890.)

Appeal from an order of the General Term of the City Court of Brooklyn, made November 27, 1888, which reversed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term, and granted a new trial.

This action was brought to enforce a stipulation given by the defendant, Samuel Lockard, to the plaintiff.

It appeared that on September 18, 1886, plaintiff recovered a judgment by default against the said Lockard; that upon a motion to open said default, said Lockard was represented by defendant Halpin, as his attorney. This motion was opposed on the ground, among others, that it was made to enable Lockard to realize on a judgment he had recovered through Halpin as his attorney against one Stegman, on which there was unpaid $1,096, plaintiff assenting thereto on condition that Lockard execute a stipulation to the effect that plaintiff's judgment should "remain and be a lien" upon the Stegman judgment until the final determination of the action, and that Lockard would not sell or dispose of the same. Said stipulation was thereupon executed and acknowledged before Halpin, and delivered to plaintiff. Plaintiff having finally succeeded in his action against Lockard brought this action against Stegman, Lockard, Halpin and others. Halpin set up as a defense that at the time said stipulation was given he had a lien as attorney upon the judgment against Stegman for $1,000. Plaintiff did not know of the existence of such lien until informed by Halpin's answer.

Further facts appear in the opinion.

*John Henry Hull* for appellant. When one takes an assignment of a debt upon the faith of what the debtor says as to the validity or balance or other circumstance of the claim, the debtor is estopped to impeach it. If, as Halpin claims, he was the owner of the judgment, it was his duty to

speak. (*Foster* v. *Newland*, 21 Wend. 94; *Tyler* v. *Yates*, 3 Barb. 222.) Aside from any disputed evidence, it is not at all questioned that Halpin gave the stipulation, and, having drawn it, knew its contents. He is, therefore, estopped from asserting any superior rights (if he ever had any). (*Gregg* v. *Wells*, 10 Ad. & El. 90; *Nevin* v. *Belknap*, 2 Johns. 573; *Watson* v. *McLaren*, 19 Wend. 572; *Wegh* v. *Boylan*, 85 N. Y. 394; *Viele* v. *Judson*, 82 id. 40.) Even if Halpin claims that being silent merely did not waive his claim, and that this is all he admits, the cases are abundant that he is estopped. (*L. M. Bank* v. *Morgan*, 117 U. S. 96; *Wheeler* v. *N. B. R. Co.*, 115 id. 29, 36; *Town* v. *Medham*, 3 Paige, 545; *Pickard* v. *Sears*, 6 Ad. & El. 469; *Regina* v. *S. U. Co.*, L. R. [8 Q. B.] 420; 1 Drew, 183; 2 id. 73.) Halpin's concession that he witnessed the stipulation, that it was in his own handwriting, is, in itself, fatal to his claim. (*Hale* v. *Skinner*, 117 Mass. 474; *Stevens* v. *Dennett*, 51 N. H. 324; *Horn* v. *Cole*, Id. 287.)

*Martin E. Halpin* for respondents. An attorney has a lien upon his client's cause of action, and upon any verdict and judgment recovered. (*Davidson* v. *Alfaro*, 16 Hun, 363; *Coughlin* v. *N. Y. C. & H. R. R. R. Co.*, 71 N. Y. 443; *Whitehead* v. *Kennedy*, 69 id. 462; *Zogbaum* v. *Parker*, 55 id. 120; *People* v. *B. S. S. Bank*, 10 Abb. [N. C.] 15; *Ennis* v. *Curry*, 22 Hun, 584; 61 How. Pr. 1; *Jenkins* v. *Adams*, 22 Hun, 600; Code Civ. Pro. § 66; 10 Abb. [N. C.] 393; *Deutsch* v. *Webb*, Id. 393; *Quinnan* v. *Clapp*, Id. 394; *Russell* v. *Somerville*, Id. 395, 396; *Eberhardt* v. *Schuster*, Id. 374; 87 N. Y. 521; *In re Knapp*, 85 id. 274; *Brown* v. *Mayor*, etc., 11 Hun, 21; 9 id. 587; *In re Fincke*, 16 Daly, 111; *Parker* v. *Spear*, 62 How. Pr. 394; *Prentiss* v. *Livingston*, 60 id. 380; *Wilber* v. *Baker*, 24 Hun, 24; *McBratney* v. *R. W. & O. R. R. Co.*, 86 N. Y. 467; *Keeler* v. *Keeler*, 51 Hun, 505; *Chester* v. *Jumel*, 5 N. Y. Supp. 809.) No notice of the respondent Halpin's lien was necessary. (*Coster* v. *G. P. F. Co.*, 5 Civ. Pro. Rep. 164; 98 N. Y. 660; *Lewis* v. *Day*,

10 Wkly. Dig. 49 ; *Naylor* v. *Lane,* 5 Civ. Pro. Rep. 149.)
There can be no legal claim of estoppel herein. (*N. Y. R.
Co.* v. *Rothery,* 107 N. Y. 310 ; *Viele* v. *Judson,* 82 id. 32,
40 ; *Hill* v. *Eppley,* 31 Penn. St. 331, 334.)

Finch, J.   Whether the defendant Halpin was estopped as
against the plaintiff from asserting his lien upon the judgment
which he had obtained as the attorney of Lockard is the ques-
tion upon which the courts below have differed, and which
this appeal requires us to answer.   The situation must be con-
sidered.   Judgment had gone against Lockard by default in
favor of the present plaintiff.   The former desired to come in
and defend, and appeared before the court asking that favor,
and, of course, subject to any conditions which the court might
think it just to impose.   Lockard was represented on the
motion by Halpin as his attorney.   The plaintiff had reason
to suspect that the financial condition of Lockard was precari-
ous, and that opening the default would endanger the ultimate
recovery if in the end it should be awarded.   A specific fact
was stated to the court in justification of the doubt expressed.
It was said that Lockard had a judgment against Stegman for
$1,096, which, if the default was opened, might easily be
transferred or collected, and put beyond plaintiff's reach, and
it was intimated that such was the very purpose sought by
opening the default and delaying a recovery.   Some answer
to this objection was necessary to influence the action of the
court.   That answer was the suggestion that the moving party
was willing to stipulate that the plaintiff might have a lien
upon the judgment for his security.   The proof does not make
it certain who originated the suggestion, but leaves it certain
that Halpin, representing Lockard, availed himself of it as an
answer to the objection urged against opening the default,
and consented that such lien should be given.   Of course the
suggestion implied full power in Lockard to give the lien, and
that when given it would prove an adequate and effective
security.   If at that time the truth had been told by Halpin
that he himself had a debt against Lockard for $1,000, for

which the judgment against Stegman was already bound, and that, therefore, it could furnish no security to the plaintiff for his ultimate recovery, the court might have refused the favor and the plaintiff insisted upon his judgment.  Both court and counsel were misled by the silence of Halpin, and his conceal-ment of his lien.  He knew that they were being misled by his silence, for he perfectly understood that the court supposed its condition to be adequate and effective for the plaintiff's protection, and was acting upon and being influenced by that supposition; and, also, that the plaintiff was assenting to the proposed order on the same basis.  It thus became Halpin's duty to speak.  Silence operated as a fraud, both upon the court and the plaintiff, misled them to the latter's injury, and was intended to mislead them by leaving them to rely upon the appearance of security which Halpin himself controlled and meant to absorb.  Beyond his silence he was, as the attorney of Lockard, availing himself of that silence and the resultant deception to secure success on his motion and a favorable result for his client.

It is not a satisfactory answer to this view of the situation that the court and the plaintiff were self-deceived, and them-selves constructed the trap into which they blindly strayed.  That answer is based upon the fact that the plaintiff and his counsel knew that Halpin had been the attorney of Lockard all through the litigation with Stegman, and were bound to know that, as such attorney, he had, under the law, a lien upon the judg-ment for the value of his services.  But the plaintiff did not know nor the court understand that Halpin was unpaid, and so had a lien which he was at liberty to enforce.  Least of all did they know the amount of Halpin's unpaid claim, and that it was large enough to swamp the whole judgment and turn the court's condition into something little better than a farce. The truth should have been told; the emergency made it Halpin's duty to tell it; and his silence, by force of which he misled those who relied upon it and accomplished his purpose of opening the default, cannot now be broken to the injury of the other party.  That silence, and the use he made of it, jus-

tified the plaintiff and the court in assuming that he had been paid for his services and had no lien, or that, if unpaid, he was otherwise secured, or that to secure a trial for his client he was willing to subject his lien to the chances of that trial and waive it as against the plaintiff. Indeed, we are inclined to think that at the time Halpin *did* mean to waive his lien as against plaintiff, and *did* intend to allow the judgment to stand as the effective security it seemed to be, and so was *not* consciously and purposely misleading and deceiving both the court and the adverse party. Very likely he thought it safe to do so because he expected to defend successfully when the default was opened, and was willing to take that risk. Something like that he is represented to have said; but while he denies having made the statement, the fact itself, of his intent when the order was granted, seems, at least, the most charitable supposition. But if that be not so his silence justified the action founded upon it, and works an equitable estoppel against his present claim.

The order of the General Term should be reversed with costs in that court and in this, and the judgment of the Special Term be affirmed.

All concur.

Order reversed and judgment affirmed.